UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| XCALIBER INTERNATIONAL, LTD., LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 3:17-cv-01021 ) CHIEF JUDGE CRENSHAW ) |
| DAVID GERREGANO and HERBERT SLATERY, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

The Tennessee Department of Revenue is attempting to collect a default judgment it obtained against a third party from Xcaliber International, Ltd., LLC ("Xcaliber"). Xcaliber does not believe it owes the Department of Revenue for the default judgment, and the parties are currently litigating this matter in an administrative hearing with the Department of Revenue and in the Davidson County, Tennessee, Chancery Court. Unsatisfied with the way discovery is progressing in the state proceedings, Xcaliber filed this action against David Gerregano and Herbert Slatery in their official capacities (hereinafter, the "State"). Before the Court is the State's Motion to Dismiss. (Doc. No. 12.) For the following reasons, the Motion is granted in part and denied in part.

I.  ALLEGATIONS

In 1998, Tennessee, among other states, settled a lawsuit with certain large tobacco product manufacturers that claimed the manufacturers hid evidence and misrepresented the effects of smoking. (Doc. No. 1 at 4.) As part of the settlement agreement, those large tobacco product manufacturers must pay Tennessee in perpetuity (the "Settling Manufacturers"). (Id. at 5.) In

return, Tennessee passed an escrow statute, creating escrow accounts for tobacco product manufacturers who were not parties to the lawsuit ("Non-Participating Manufacturers") to pay into. (Id.); TENN. CODE ANN. § 47-31-103(a)(2)(A). The escrow statute requires the Non-Participating Manufacturers to pay into an escrow account an amount substantially similar to the amount that the Settling Manufacturers have to pay under the settlement agreement. (Doc. No. 1 at 5); TENN. CODE ANN. § 47-31-103(a)(2)(A). This money is used to offset the increased costs for the Settling Manufacturers and can to be used to pay settlements for future lawsuits. (Doc. No. 1 at 5); TENN. CODE ANN. § 47-31-103(a)(2)(D). The Non-Participating Manufacturers receive the benefit of interest and appreciation from their deposited funds, and those funds get refunded after twenty-five years if the funds are not used to pay a settlement. (Doc. No. 1 at 5); TENN. CODE ANN. § 47-31-103(a)(2)(D).

Both the Settling and Non-Participating Manufacturers must certify annually that they are in compliance with the escrow statute or the settlement agreement. TENN. CODE ANN. § 67-4-2602(a). The Commissioner of the Department of Revenue creates a directory "listing all tobacco product manufacturers that have provided current and accurate certifications conforming to the requirements of subsection (a) and all brand families that are listed in such certifications." Id. at (b). If a tobacco product manufacturer is not included in the directory, it cannot sell cigarettes in Tennessee. Id. at (c)(2).

The Commissioner cannot include in the directory a non-participating manufacturer nor brand family if the brand family, "whether or not listed by such non-participating manufacturer, has not fully paid into a qualified escrow fund governed by a qualified escrow agreement that has been approved by the attorney general and reporter." Id. at (b)(2)(A). It also cannot include the

non-participating manufacturer or brand family if there is an outstanding final judgment that "has not been fully satisfied for such brand family or such manufacturer." Id. at (b)(2)(B).

If the Commissioner removes a brand family or tobacco product manufacturer from the directory, the Commissioner must give fifteen days notice to the manufacturer and post public notice in the directory. TENN. CODE ANN. § 67-4-2606(a). That decision is subject to review as provided in Tennessee Code Annotated § 67-1-105 and the Uniform Administrative Procedures Act. Id. Under Tennessee Code Annotated § 67-1-105(a), the aggrieved party may request a hearing before the Commissioner within ten days of the removal from the directory. The Commissioner or a hearing officer shall allow the aggrieved party to present evidence at a hearing and issue findings of fact and conclusions of law. Id. at (b)-(d).

The aggrieved party may then seek judicial review in the Davidson County Chancery Court. TENN. CODE ANN. § 4-5-322(b)(1)(A). Either party may ask to present additional evidence, and the court may grant that request if the party presents good reasons for failure to present that evidence before the agency. Id. at (e). If neither party presents additional evidence, the Chancery Court confines its review to the record created before the agency. Id. at (g). The court may reverse or modify the decision of the agency if, among other reasons, the agency's decision violates the constitution or a statute. Id. at (h). The reviewing court shall issue written findings of fact and conclusions of law on its decision. Id. at (j).

*1. The Sudamax Litigation*

In 2003, Sudamax manufactured the "Berkley" brand of cigarettes. (Doc. No. 1 at 6.) Sudamax used a different company, Samurai Industria e Comercio de Cigarros, Ltda. ("Samurai"), to import the cigarettes to the United States and sell the cigarettes in Tennessee. (Id.) A third company, Tantus, marketed the "Berkley" cigarettes. (Id.) Tantus deposited money into a

Tennessee escrow account in 2003, pursuant to an agreement with Sudamax, but no further escrow payments were made. (Id.) The State sued Sudamax and Samurai in state court for the escrow payments through 2006. (Id.; Doc. No. 1-3.) Also named in the lawsuit is Centurian Industria e Comercio de Cigarros, Ltda. ("Centurian"), which certified itself as the manufacturer of the "Kingsley" brand of cigarettes, although Sudamax actually manufactured them. (Doc. No. 1 at 6; Doc. No. 1-3.) Tantus was not named in the lawsuit. (Doc. No. 1 at 6; Doc. No. 1-3.) Through this lawsuit, the State obtained a default judgment of $1,864,549.20 in unpaid escrow, $5,593,649.60 in penalties, and $48,581.76 in attorney's fees. (Doc. No. 1 at 6-7; Doc. No. 1-6.) Sudamax was also prohibited from selling cigarettes in Tennessee for a period of two years. (Doc. No. 1 at 7; Doc. No. 1-6.)

Eventually, Tantus began manufacturing the "Berkley" cigarettes in addition to selling "24/7" cigarettes in Tennessee. (Doc. No. 1 at 12.) The State did not pursue Tantus for payment of the default judgment it obtained against Sudamax.[1] (Id.) In 2013, certain actors at Tantus committed unrelated criminal misconduct and Tantus stopped selling cigarettes in Tennessee. (Id.)

   *2. Xcaliber Purchases "Berkley" and "Berley"*

In July 2016, Xcaliber purchased from Tantus the right to produce several brands of cigarettes, including "Berkley" and "Berley." (Doc. No. 1 at 12-13.) That month, the State asked Xcaliber if it intended to satisfy Tennessee's judgments against Sudamax, to which Xcaliber responded that it was not required to do so. (Doc. No. 1 at 13.) Xcaliber has not sold any "Berkley" or "Berley" cigarettes in Tennessee, although it sells "Echo" and "Edgefield" brands in the state. (Id.)

---

[1] This appears to be contradicted by the State's Supplemental Discovery Responses in the Department of Revenue action, stating that it did seek the unpaid escrow funds from Tantus after it started manufacturing the "Berkley" cigarettes. (Doc. No. 1-38 at 59.)

4

On December 5, 2016, Xcaliber received a letter from the Department of Revenue notifying that Xcaliber would not be able to sell cigarettes in Tennessee effective December 16. (Id. at 14.) On December 19, Xcaliber filed a "Petition for Contested Case Hearing and Stay of Department Action with the DOR." (Doc. No. 1 at 15; Doc. No. 1-33.) Tennessee law allows a tobacco manufacturer who is removed from the directory by the Department of Revenue to ask for review, under the procedures in Tennessee Code Annotated § 67-1-105, pursuant to the Uniform Administrative Procedures Act. TENN. CODE ANN. § 67-4-2606(a). The Commissioner can assign a hearing officer to decide the contested action. Id. § 67-1-105(b)(2).

Xcaliber agreed to deposit $1,864,549.20 in a trust fund of its counsel pending resolution of the Department of Revenue action in exchange for being allowed to continue selling cigarettes in the state pending final resolution of the Department of Revenue action. (Id.) After the State did not answer discovery requests to the satisfaction of Xcaliber and the hearing officer denied Xcaliber's Motion to Compel (Doc. No. 1-39), Xcaliber took an interlocutory appeal to the Davidson County, Tennessee, Chancery Court and filed this action. The Chancery Court has since declined jurisdiction over the interlocutory appeal and Xcaliber appealed that order to the Tennessee Court of Appeals, which is pending. (Doc. No. 42.) Meanwhile, the Department of Revenue action is stayed pending the resolution of the state court appeal. (Id.)

II. ANALYSIS

The Complaint alleges violations of the Equal Protection and Due Process clauses of the Fourteenth Amendment to the United States Constitution, the Takings Clause of the Fifth Amendment to the United States Constitution, and 42 U.S.C. § 1983. (Doc. No. 1.) The State moves to dismiss on four grounds: (1) the Court lacks subject matter jurisdiction, pursuant to Younger v. Harris, 401 U.S. 37 (1971), until the state proceedings conclude; (2) improper venue

5

because the parties signed a contract establishing the Department of Revenue as the venue for any dispute; (3) Xcaliber does not have standing; and (4) Xcaliber fails to state a claim upon which relief can be granted. (Doc. No. 13.) Because the Court declines to exercise jurisdiction over this matter, pursuant to Younger, the Court will only address that ground.

Generally, federal courts "should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not 'refus[e] to decide a case in deference to the States.'" Sprint Commc'ns v. Jacobs, 134 S.Ct 584, 588 (2013) (quoting New Orleans Public Serv., Inc. v. Council of City of New Orleans, 401 U.S. 350, 373 (1989) ("NOPSI")). Younger created an exception to the general rule to prevent federal courts from interfering with ongoing state criminal proceedings. Doe v. Univ. of Ky., 860 F.3d 365, 368 (6th Cir. 2017) (citing Younger, 401 U.S. at 44). The Younger doctrine has been expanded into three categories of parallel proceedings: where there is (1) an ongoing criminal prosecution; (2) certain civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) "'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions,' such as contempt orders." Id. at 369 (quoting references omitted). If the parallel proceeding fits into one of the above, the defendant must show: (1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims. Id. (citing Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432-34 (1982)).

A. WHETHER YOUNGER APPLIES

Xcaliber argues that the Department of Revenue proceeding does not fall into one of the three categories of parallel proceedings eligible for the Younger abstention. (Doc. No. 20 at 2-4.) More specifically, Xcaliber argues that it initiated the administrative proceedings and there was

"no investigation culminating in the filing of a formal complaint or charges against Xcaliber," so it is not the State attempting to hold Xcaliber guilty of wrongful acts. (Id. at 4.)

The Supreme Court recently clarified—and narrowed—what sort of administrative actions are "akin to a criminal prosecution." Sprint, 134 S.Ct at 592 (quoting Huffman v. Pursue, Ltd., 420 U.S. 592, 604 (1975)). The Court held:

> Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.,* the party challenging the state action, for some wrongful act. [See e.g., Middlesex, 457 U.S., at 433–434] (state-initiated disciplinary proceedings against lawyer for violation of state ethics rules). In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. [See e.g., Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619 (1986)] (state-initiated administrative proceedings to enforce state civil rights laws); [Moore v. Sims, 442 U.S. 415, 419–420 (1979)] (state-initiated proceeding to gain custody of children allegedly abused by their parents); [Trainor v. Hernandez, 431 U.S. 434, 444, (1977)] (civil proceeding "brought by the State in its sovereign capacity" to recover welfare payments defendants had allegedly obtained by fraud); [Huffman, 420 U.S. at 598] (state-initiated proceeding to enforce obscenity laws). Investigations are commonly involved, often culminating in the filing of a formal complaint or charges. [See e.g., Dayton, 477 U.S. at 624] (noting preliminary investigation and complaint); [Middlesex, 457 U.S. at 433] (same).

Sprint, 134 S.Ct. at 592. As such, the Supreme Court held that Younger did not apply to a dispute between two private parties before an administrative tribunal. Id. at 593.

Applying Sprint to this case, the Department of Revenue dispute is a civil enforcement action akin to a criminal prosecution. First, contrary to Xcaliber's argument, the administrative action was commenced by the State, pursuant to Tennessee Code Annotated § 67-4-2606(a), in its December 1 letter informing Xcaliber that it would be removed from the State's directory and giving Xcaliber fifteen days to appeal the decision. (Doc. No. 1-32.) That letter establishes that the Department of Revenue has initiated a proceeding to sanction the Xcaliber. An investigation was involved, as shown in the State's July 19, 2016 letter asking Xcaliber multiple questions (Doc. No. 1-29), and it culminated in civil charges that Xcaliber is not escrow compliant for its "Berkley" cigarettes. (Doc. No. 1-32.) Cf. Thomas v. Schroer, No. 2:13-cv-2987-JPM-cgc, 2016 WL

7

3636273, at *1 (W.D. Tenn. June 3, 2016) (holding that Younger applied when the plaintiff was appealing the Tennessee Department of Transportation decision to the Chancery Court). Xcaliber's appeal of the Department of Revenue's decision to remove it from the directory is akin to a criminal proceeding, and this case is therefore eligible for the Younger abstention.

    B.  MIDDLESEX FACTORS

Turning to the Middlesex factors, Xcaliber does not dispute that the state judicial administrative proceedings are ongoing. (Doc. No. 20 at 4.) It instead argues that the State does not have an important interest in "attempting to hold Xcaliber liable for the payment of a monetary judgment that undeniably was obtained against a wholly unrelated third-party." (Id. at 5.) It also argues that it would be denied a "full and fair review" of its constitutional claims by the Department of Revenue and subsequent appeals. (Id. at 5-9.)

    *1. Important State Interest*

The Supreme Court addressed in Middlesex whether a proceeding involves "important state interests":

> The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature, as in [Huffman v. Pursue, Ltd., 420 U.S. 592 (1975)]. Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. [Trainor v. Hernandez, 431 U.S. 434 (1977); Juidice v. Vail, 430 U.S. 327 (1977)].

457 U.S. at 431. Courts "do not look narrowly to [the state's] interest in the outcome of the particular case." NOPSI, 491 U.S. at 365. Rather, courts look to the "importance of the generic proceedings to the State." Id.

Under this standard, Xcaliber's argument must fail. Xcaliber asks the Court to narrowly look at the outcome of this case and determine that the state does not have an interest in holding it liable for a judgment against a third party. (Doc. No. 20 at 4-5.) This is exactly the argument

rejected in NOPSI. Instead, the Court must determine whether the Department of Revenue has an important interest in enforcing the tobacco escrow statute. The Court believes that enforcement of the tobacco escrow statute advances Tennessee's financial responsibility to protect the public health.

The Sixth Circuit has found important state interests in multiple contexts: maintaining and assuring the professional conduct of attorneys, American Family Prepaid Legal Corp. v. Columbus Bar Association, 498 F.3d 328, 334 (6th Cir. 2007) (citing Squire v. Coughlan, 469 F.3d 551, 556 (2006)); governing state and local housing codes, Carroll v. City of Mount Clemens, 139 F.3d 1072, 1075 (6th Cir. 1998), and zoning laws, Nimer v. Litchfield Township Board of Trustees, 707 F.3d 669, 701 (6th Cir. 2013); divorce laws, Kelm v. Hyatt, 44 F.3d 415, 420 (6th Cir. 1995); governing the health and safety of its workers, Sun Refining & Marketing Co. v. Brennan, 921 F.2d 635, 640 (6th Cir. 1990); eliminating sexual assault on college campuses and establishing a fair and constitutionally permissible disciplinary system, Doe, 860 F.3d at 370; and many others. Xcaliber does not cite any precedent—binding or otherwise—that held that a quasi-criminal proceeding such as the one initiated against Xcaliber would not be an important state interest. The strong weight of authority requires the Court to find that the state has an important interest in regulating its escrow statute.

*2. Adequate Opportunity to Raise Constitutional Claims*

Xcaliber has an adequate opportunity to raise its constitutional claims under the Tennessee Uniform Administrative Procedures Act. In Watts v. Burkhart, 854 F.2d 839, 847 (6th Cir. 1988), the Sixth Circuit directly held that Younger applied to Tennessee's Uniform Administrative Procedures Act because it "expressly contemplates that a petitioner will be afforded an opportunity to raise constitutional issues, such as [ ] claims of lack of due process, and state statutory

arguments, such as those raised by [the plaintiff] concerning the manner in which the initial hearing before the Board was conducted." See also Thomas v. Schroer, No. 13-2987-JPM-cgc, 2016 WL 1583670, at *2 (W.D. Tenn. April 19, 2016) (citing Fed. Exp. Corp. v. Tenn. Pub. Serv. Comm'n, 925 F.2d 962, 970 (6th Cir. 1991) ("[J]udicial review under Tennessee's Uniform Administrative Procedures Act satisfies the third element of the Younger analysis because it provides sufficient opportunity to litigate constitutional claims."). Xcaliber's argues that Northwest Airlines, Inc. v. Tennessee State Board of Equalization, 11 F.3d 70 (1993), requires a different result under the Tennessee Uniform Administrative Procedures Act. However, Northwest Airlines only holds that the Tennessee Uniform Administrative Procedures Act does not meet the "minimal procedural criteria" under the Tax Injunction Act, 11 F.3d at 73, and in no way disturbs Watts' holding that a plaintiff will have an "adequate opportunity" to raise constitutional claims under the Tennessee Uniform Administrative Procedures Act, 854 F.2d at 848. As review of the Department of Revenue's decision is governed by Tennessee's Uniform Administrative Procedures Act, Watts governs, and the third element of Younger is established.

III. CONCLUSION

For the foregoing reasons, the Court abstains from exercising jurisdiction over this case, pursuant to Younger. As such, the Court will not address the State's arguments under Federal Rule of Civil Procedure 12(b)(3) and (6) at this point. The State's Motion to Dismiss (Doc. No. 12) is granted with respect to abstaining. The case is stayed pending the conclusion of the Department of Revenue action.

The Court will enter an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE